UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MISENER MARINE CONSTRUCTION, INC.,

    Plaintiff,

v.                       404CV146

NORFOLK DREDGING COMPANY, et al.

    Defendants.

NORFOLK DREDGING COMPANY,

    Counterclaim Plaintiff,

v.

MISENER MARINE CONSTRUCTION, INC.,

    Counterclaim Defendant.

NORFOLK DREDGING COMPANY,

    Third-Party Plaintiff,

v.

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA,

    Third-Party Defendant.

## ORDER[1]

## I. INTRODUCTION

Before the Court in this admiralty case are three pending matters: (1) Norfolk Dredging Company (Norfolk)'s claim for attorneys' fees from Misener Marine Construction, Inc. (Misener) (doc. ## 237, 245, 281, 282, 284, 289, 290, 291); (2) Norfolk's claim that Misener has not yet satisfied the judgment against it (doc. # 291); and (3) Norfolk's Bill of Costs. Doc. ## 157, 158, 183, 226.

## II. BACKGROUND

Norfolk's claims in this lawsuit arose out of Misener's and Travelers Casualty & Surety Co. (Travelers)'s failure to pay Norfolk for 2004 dredging work that Norfolk performed for Misener. Instead of paying Norfolk, Misener sued it for negligence, alleging that the dredging work adversely affected Misener's dock construction project. Doc. # 1. Norfolk denied liability and counterclaimed against Misener, then filed a third-party claim against Travelers as a payment bond surety. Doc. # 14. As its sole defense to Norfolk's counterclaim, Misener simply "adopt[ed] each and every allegation, claim, and assertion made in its Complaint against Norfolk." Doc. # 23 at 5. Misener later filed an Amended Complaint, including claims against General Gas Carrier Corp./The Steven N (General Gas) and against certain other, since-dismissed parties. Doc. # 25.

In 10/05, Misener filed two voluntary Motions to Dismiss. Doc. ## 120 & 119. One asked the Court to dismiss with prejudice all of Misener's claims against Norfolk. Doc. # 120. The other sought a with-prejudice dismissal of Misener's claims against General Gas. Doc. # 119. Each motion stated that "for various and sundry reasons unrelated to the merits, the Plaintiff Misener . . . no longer wishes to pursue its causes of action." *Id.* at 1; doc # 120 at 1. Norfolk and General Gas did "not object to the Motions to Dismiss filed by Misener, provided [that] Norfolk's Counterclaim against Misener and Third-Party Claim against Travelers remain[ed] pending for adjudication by this Court," while Misener's claims were dismissed with prejudice. Doc. # 122 at ¶¶ 6, 7.[2]

---

[1] This case was originally before the Hon. John F. Nangle but, since his passing, has been reassigned to the undersigned. Doc. # 317.

[2] Norfolk also expressly reserved "all rights with respect to its Counterclaim and Third-Party Claim." Doc. # 122 at ¶ 6.

The Court granted the Motion to Dismiss. Doc. # 126. Norfolk then filed a Motion for Summary Judgment (MSJ) on its counterclaim for its $166,152.00 in dredging services, plus interest and attorneys' fees as provided under Georgia's Prompt Pay Act (GPPA), O.C.G.A. §§ 13-11-7 & -8 (2005). Doc. # 130.

The Court granted Norfolk's motion in part and, under the GPPA, awarded the requested $166,152.00 plus interest at the rate of 7% per year from 9/3/04 to 10/20/04, and thereafter at the rate of 1% per month. Doc. # 237 at 8. The Court also concluded that an award of attorneys' fees pursuant to Georgia state law was not inconsistent with federal maritime law, so the GPPA's provisions regarding attorneys' fees and related interest should supplement general maritime law in this case. *Id.* at 4-8. The Court did not, however, issue a final ruling on attorneys' fees. Rather, it instructed the parties to brief whether the GPPA would allow for attorneys' fees accrued by Norfolk while defending itself from Misener's claim (as opposed to limiting fees to those accrued in prosecution of Norfolk's counterclaim). *Id.* at 10. The parties have complied. Doc. ## 245, 306, 307.

## III. ANALYSIS

### A. Norfolk's Attorneys' Fees

Misener urges the Court to reevaluate Judge Nangle's ruling on attorneys' fees and hold that federal maritime law prohibits application of GPPA's attorneys' fee provision. Doc. # 307. The issue is whether it is improper to apply state law to award attorneys' fees in this case.

### 1. *Admiralty Law*

The Court previously concluded that, "because this case involves dredging in navigable waters, it falls within admiralty's domain." Doc. # 237 at 5. That conclusion deserves some attention. To determine whether a contract is a maritime contract, courts look to the nature of the transaction. *North Pacific S.S. Co. v. Halls Bros. Marine R. & Shipbuilding Co.*, 249 U.S. 119, 125 (1919). Traditionally, dredging vessels and their activities have come under admiralty jurisdiction. *See Ellis v. U.S.*, 206 U.S. 246, 259 (1907) ("The scows and the floating dredges were vessels ... within the admiralty jurisdiction of the United States") (cites omitted); *Stewart v. Dutra Construction Co*, 543 US 481 (2005) ("this Court has often said that dredges ... qualify as vessels under [maritime statutes]"); *Grubart v. Great Lakes Dredge & Dock Co.*, 513 US 527 (1995) (damage resulting from use of a crane on a barge to drive piles into riverbed was subject of admiralty jurisdiction); *Standard Dredging Corp. v. Henderson*, 150 F.2d 78 (5th Cir. 1945) (Admiralty law was applied to death of a man whose "work though mostly on land was in direct connection with and assistance of the dredge which was engaged in improving a navigable waterway. The placing of the dirt on the shore was only incidental to the main enterprise, which was maritime"); *The International*, 89 F. 484 (3d Cir. 1898) ("Admiralty jurisdiction attaches to ... dredges. Within the sphere of their activities they are subject to the maritime law of contracts and of torts and to the laws of navigation").

Despite the maritime nature of the contract, Norfolk argues that state law should govern because "jurisdiction over [its claims] is based on diversity, not admiralty." Doc. # 197 at 9. However, admiralty jurisdiction applies to Norfolk's claims even though Norfolk invokes

diversity jurisdiction. Doc. # 197 at 9. A party's rights in admiralty do not depend on whether the claim was filed in admiralty or diversity. *Pope & Talbot v. Hawn*, 346 U.S. 406, 410-11 (1953) (Court rejected the argument that state law must govern in admiralty case when plaintiff invoked diversity jurisdiction noting that "the substantial rights of an injured person are not to be determined differently whether his case is labeled 'law side' or 'admiralty side' on a district court's docket") (cite omitted); *see also Capozziello v. Brasileiro*, 443 F.2d 1155, 1157 (2d Cir. 1971) ("That the district court's diversity, rather than its admiralty, jurisdiction has been invoked does not change the applicable law"). Thus, the substantive law depends on the nature of the contract in dispute – not the jurisdictional hook relied upon by the claimant.

Norfolk also argues that, because a general contract between Misener and Georgia Ports Authority (GPA) had an express provision that Georgia law would control that contract, it follows that Georgia law must govern the subcontract between Misener and Norfolk (the Dredging Agreement). Doc. # 197 at 6-7. Where parties have included a choice of law clause in an admiralty contract, state law may govern. *See Stoot v. Fluor Drilling Serv.*, 851 F.2d 1514, 1517 (5th Cir. 1988). Thus, Georgia law may govern the contract between Misener and GPA. However, Norfolk admits that "the Dredging Agreement itself contains no choice of law provision." Doc. # 197 at 5. And it cites no legal authority for the proposition that a choice of law provision in a general contract has any bearing on the law governing a separately negotiated subcontract between different parties simply because the subject matter is related.

Meanwhile, it cannot be denied that Norfolk's claims arose from a contract related to traditional maritime activities to be performed on navigable waters. Thus, the contract falls under admiralty jurisdiction, so maritime law governs here.

### 2. *State Law*

In a previous Order this Court concluded that the GPPA should supplement maritime law. Doc. # 237 at 8. Misener believes that this holding was in error and requests this Court to "find that, absent one of the well-known exceptions, a claim under federal maritime law cannot be subject to claims of attorneys' fees based upon state statutes." Doc. # 307 at 12.

The exercise of admiralty jurisdiction "does not result in automatic displacement of state law." *Jerome V. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 544-57 (1995). "[W]hen neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in maritime law." *Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co., Inc.*, 207 F.3d 1247, 1251 (11th Cir. 2000). "[S]tate laws inconsistent with the substance of federal maritime law should be given no effect." *White v. Mercury Marine Div. of Brunswick, Inc.*, 129 F.3d 1428, 1431 (11th Cir. 1997) (cite omitted). Thus, the question for this Court is whether Georgia's state law should supplement maritime law.

### a. ATTORNEYS' FEES UNDER MARITIME LAW

The law regarding attorneys' fees under maritime law is clear. "The prevailing party in

an admiralty case is not entitled to recover its attorneys' fees as a matter of course. Attorneys' fees generally are not recoverable in admiralty unless (1) they are provided by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees." *Natco Ltd. P'ship v. Moran Towing of Florida, Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001) (citing *Noritake Co. v. Hellenic Champion*, 627 F.2d 724, 730, 730-31 n. 5 (5th Cir. 1980)).

Norfolk argues that even if maritime law does apply, attorneys' fees are recoverable under *Natco* because the GPPA provides for them and is "the statute governing the claim." Doc. # 197 at 13. That argument simply begs the question that is at issue -- whether state law may govern an attorneys' fees awards under a maritime contract. Further, the "governing statute" exception allowing for attorneys' fees appears to contemplate a *federal* statute. And Congress -- not the states -- calls the shots here. *See Noritake*, 627 F.2d at 730 ("Although *Congress* undoubtably could have explicitly provided for the award of attorneys' fees ... no such statutory authorization appears.... Nor is there any other *federal statutory authorization* for the award of attorneys' fees in this type of admiralty proceeding. Absent some statutory authorization, the prevailing party in an admiralty case is generally not entitled to an award for attorneys' fees.") (emphasis added) (cite omitted).

In a footnote Norfolk attempts to exploit *Natco*'s "bad faith" criterion: "Meisener's [sic] claim that it nonetheless filed its action in good faith is not well taken." Doc. # 197 at 4 n. 4. Norfolk, however, has presented no convincing support for that charge. Nor does it cite to a contractual provision providing for indemnification of attorneys' fees. Thus, none of the *Natco/Noritake* exceptions apply.

As maritime law does not allow for attorneys' fees in this case, the Court might end its analysis here. However, Judge Nangle previously ruled that the GPPA attorneys' fees provision could supplement maritime law. Doc. # 237 at 5-8. That inconsistency must now be addressed.

### b. CASE LAW

Misener insists that the case law relied upon does not support Judge Nangle's conclusion. Doc. # 307. The Court cited to *Coastal Fuels* for the proposition that state law attorneys' fee awards in admiralty cases do not undermine the uniformity of maritime law. Doc. # 237 at 6, 7. But in *Coastal Fuels*, argues Misener, "a specific contractual provision allow[ed] for the recovery of attorney's fees as damages for breach of the [contract]." *Coastal Fuels*, 207 F.3d at 1250. It allowed for fees to be awarded to the "prevailing party" and the issue in that case was how to define that term. Because "[n]othing particularly maritime in nature sticks out about [the issue of how to define "prevailing party"], [the court looked] to [state] law for guidance." *Id.* at 1251-52.

The *Coastal Fuels* award of attorneys' fees thus was based on one of the three *Natco/Noritake* exceptions -- an express contractual provision -- and not the application of state law. State law was only used to interpret an ambiguous term of the contract. The Court therefore agrees with Misener that Judge Nangle's reliance on that case was misplaced.

4

The Court had also cited to *All Underwriters v. Weisberg*, 222 F.3d 1309 (11th Cir. 2000). Doc. # 237 at 6. That case, argues Misener, does not support an award of attorneys' fees because it was limited to a maritime *insurance* contract -- a special case in which state law has traditionally been applied to maritime law. Doc. # 307 at 7-8. That case held that "a district court may award attorney's fees pursuant to [a Florida statute] against an insurer *in a maritime insurance case*." *Id.* at 1315 (emphasis added).

The *Weisberg* holding was based on Supreme Court precedent that "the interpretation or construction of a marine insurance contract is to be determined by state law." *Id.* at 1313 (*citing Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321 ("We, like Congress, leave the regulation of marine insurance where it has been – with the states")). Nothing in *Weisberg* suggests that its holding extended beyond maritime insurance contracts, and both parties in that case agreed that "in general, attorney's fees are not recoverable in admiralty actions." *Id.* Since the contract in this case was not for marine insurance, this Court's reliance on that case also was misplaced.

The Court also relied on *Garrett v. Midwest Construction Co.*, 619 F.2d 349 (5th Cir. 1980). In *Garrett* a subcontractor sued the general contractor over a dredging contract asserting claims under the "federal common law" and under state law, pursuant to diversity jurisdiction. *Id* at 352-353. The Court denied the award of attorneys' fees for the federal claim, but awarded attorneys' fees on the state law claim pursuant to a state statute. *Id.* The Court cited the rule that "[i]n an ordinary diversity case where state law does not run counter to a federal statute or rule of court ... state law [governing attorneys' fees], which reflects a substantial policy of the state, should be followed." *Id.* at 353.

Indeed, the facts of *Garrett* and this case are strikingly similar. However, as Misener points out, "[n]either party in *Garrett* asserted any claims or defenses based on maritime law. Hence, the case was decided purely upon state law through diversity jurisdiction and should not create any precedent for admiralty jurisdiction." Doc. # 307 at 9.

*Garrett* thus does not create a rule that a state law providing for attorneys' fees may be invoked in admiralty; indeed, it says nothing of admiralty. Perhaps the most pertinent aspect of *Garrett* is that the case did not apply maritime law when considering a claim for breach of a dredging contract. It is unclear why this was so. Perhaps neither party attempted to invoke admiralty jurisdiction; or, perhaps the contract there had an express provision to apply state law. Given the contrary legal precedent cited *supra*, the Court cannot infer from *Garrett* a rule that dredging contracts, performed by vessels on navigable waters, are not subject to admiralty jurisdiction. In any event, because *Garrett* did not consider the application of a state attorneys' fees statute in an admiralty case, it did not resolve that question.

Misener, meanwhile, cites several persuasive cases that are on-point and that support its position. In *Texas A&M Research Found. v. Magna Transp. Inc.*, the Fifth Circuit refused to apply a state statute to allow the prevailing party in an admiralty contract dispute to collect attorneys' fees. 338 F.3d 394, 405 (5th Cir. 2003). It held that "the general rule of maritime law that parties bear their own costs, coupled with the need for uniformity in federal maritime law[,] precludes the application of

5

state attorney fee statutes." *Id.* at 406. The Third Circuit has held that "where a case arises under the federal maritime law ... a local statute awarding attorneys' fees should not be applied." *Sosebee v. Roth*, 893 F.2d 54, 56-57 (3d Cir. 1990). And in a maritime breach of warranty dispute, the First Circuit held that "the conduct found to violate [the state statute] falls squarely within the focus of existing maritime law, and [the state statute's] attorney's fee provision, being inconsistent with maritime law, cannot be applied to this case." *Southworth Mach. Co. v. F/V Corey Pride*, 994 F.2d 37, 42 (1st Cir. 1993). *See also Kearny Barge Co., Inc. v. Global Ins. Co.*, 943 F. Supp. 441 (D.N.J. 1996), *aff'd* 127 F.3d 1095 (3d Cir. 1997).

The Eleventh Circuit has not weighed in on this particular issue.[3] However, a district court considered "whether [a Florida statute providing for attorney's fees] is applicable in an admiralty jurisdiction case when federal maritime common law does not provide for fee shifting under such circumstances and requires each side to pay its own attorney's fees." *Garan Inc. v. M/V Aivik*, 907 F. Supp. 397, 399 (S.D.Fla. 1995). That court noted:

> The Florida statute conflicts with the American rule set forth in federal common law, as the Florida substantive rule impermissibly imposes an additional obligation on the parties in direct conflict with long-standing federal maritime common law. [¶] While Defendant argues that courts have increasingly applied state law as a supplement to the federal maritime law, such applications are only valid when federal statutory or common law is silent on the issue. *See, e.g., Wilburn Boat Co. v. Fireman's Fund Insur. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). The federal law regarding the award of attorneys' fees in the maritime context is clear and directs each side to pay its own fees. [¶] Moreover, a strong interest exists in maintaining uniformity in maritime law. In *Sosebee*, supra, the Third Circuit noted that this interest "would be undermined if the availability of attorneys' fees depended upon where the plaintiff filed suit." *Sosebee* at 56-57. Consequently, this Court believes that Florida Statutes § 768.79 would frustrate the need for uniformity in the admiralty jurisdiction and is preempted by federal maritime common law.

*Id.* at 400-01.

The Court finds this reasoning persuasive. There is a clearly established rule that admiralty law requires plaintiffs to pay their own attorneys' fees, and the GPPA is inconsistent with that law. Thus, state law should not supplement admiralty law. Norfolk's attorney fee request is therefore denied.

**B. Interest**

The Court's 1/6/06 MSJ Order awarded Norfolk its claim of $166,152. Doc. # 237 at 10. Applying Georgia law, the Court awarded interest at a rate of 7% per year from 9/3/04 to 10/20/04 and a rate of 1% per month thereafter. *Id.* at 8-9. Unlike the clearly established "American Rule" that governs attorneys fees in admiralty, there is no established rule dictating how interest should be assessed on judgments.

---

[3] In *Noritake,* a party argued on appeal that a Texas statute authorized a discretionary award of attorneys' fees in an admiralty case. 627 F.2d at 731. That court did not reach the question because the party had not raised it at trial. *Id.* at 730-732.

6

It is a matter that is left to the discretion of the Court. *Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.*, 651 F.2d 1096, 1101 (5th Cir.1981) ("Admiralty courts enjoy broad discretion in setting prejudgment interest rates. They may look to the judgment creditor's actual cost of borrowing money, to state law, or to other reasonable guideposts indicating a fair level of compensation") (cites omitted). Despite the Court's holding that the GPPA does not apply to attorneys' fees, the Court acted within its discretion in relying on state law to set an interest rate. While 1% per month is high, the Court is not eager to disturb a monetary judgment that was handed down almost three years ago.

### C. Judgment Satisfaction

Norfolk claims that Misener has yet to satisfy this Court's 1/6/06 judgment. On 8/21/06, Misener paid Norfolk a sum of $178,815.00. Doc. # 306 at 7. As of that date, however, the amount Misener owed Norfolk on the underlying judgment per the terms of this Court's 1/6/06 order, doc. # 237, equaled $204,258.46, consisting of $166,152.00 in principal and $38,106.46 in interest. *Id.* Thus the $178,815.00 paid by Misener was $12,663.00 more than the underlying judgment, but $25,443.46 less than the total amount it owed to Misener as of 8/21/06.

Norfolk applied Misener's $178,815.00 payment to interest first, then principal. Norfolk represents to this Court that Misener still owes Norfolk $25,443.46 in principal on the judgment it obtained, plus interest accruing at the rate of 1% from 8/22/06. Doc. # 306 at 7.

In response, Misener presents the Court with correspondence between counsel for the two parties in which Norfolk's attorney initially represented, in late 8/06, that the amount submitted by Misener more than satisfied its obligation to Norfolk. *See* doc. # 282 at 2.[3] Norfolk, in turn, produced a subsequent letter that its counsel sent to Misener's attorney on 9/5/06. That letter attempts to correct the statements Norfolk's counsel made in the August letter.[4] Doc. # 306 exh. X. Misener claims that Norfolk's initial acknowledgment letter constitutes an agreement between the parties that Misener satisfied the judgment. Doc. ## 282, 290. Therefore, Misener asks this Court to enter an order "requiring Norfolk to abide by its prior agreement with respect to the accrual of interest." Doc. # 290.

Misener's argument is rejected. The Court's Order, rather than Norfolk's correspondence, is the source of Misener's obligation to pay

---

[3] Norfolk's attorney indicated that the amount Misener paid ($178,815.00) was

> for the amount of the original invoice, not the adjusted invoice which Norfolk had agreed to accept in payment for which it brought counterclaim. As you will recall, the adjusted amount was $166,152.00. Norfolk is prepared to treat the additional $12,663.00 paid as a credit against any future award of interest, cost, and/or attorney's fees. Alternatively, Norfolk Dredging is prepared to refund the excess payment pending final resolution of the matter by the Court. Please advise how you would like to proceed.

Doc. # 282 at 2 (Letter from James Chapman to counsel for Misener (8/22/06)).

[4] The letter states: "This is to correct an error in my August 22, 2006 correspondence to you regarding Misener's payment to Norfolk in the amount of $178,815.00. I had forgotten that Judge Nangle previously ordered Misener to pay both principal and interest on its claim." Doc. # 306 exh. X. (Letter from James Chapman to D. Pipitone (9/5/06)).

7

Norfolk. The Court applies Misener's 8/21/06 payment of $178,815.00 first to the interest that had accrued as of that date ($38,106.46).[5] The payment balance of $140,708.54 ($178,815.00 minus $38,106.46) is then applied to the underlying judgment of $166,152.00, leaving a principal balance of $25,443.46. Interest, calculated on the principal balance of $25,443.46 at the rate of 1% per month of delay in payment, equals $6,951.73 as of 12/1/08.[6] Accordingly, Misener is ordered to pay Norfolk a total of $32,385.19 which includes both principal and interest on the judgment obtained by Norfolk for dredging services rendered to Misener.

### D. Bill of Costs

After Misner voluntarily dismissed Norfolk and General Gas, each filed a Bill of Costs. Doc. ## 157, 135. Misener and General Gas have settled their dispute over its Bill of Costs. Doc. # 313. Misener objects, however, to Norfolk's Bill of Costs.

The Federal Rules of Civil Procedure apply to admiralty cases. F.R.Civ.P. 1. Rule 54(d)(1) allows prevailing parties to receive costs other than attorneys' fees. F.R.Civ.P. 54(d)(1). The rule embodies a presumption in favor of awarding costs, which an opposing party must overcome. *See Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1295 (11th Cir. 2001); *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 639 (11th Cir.1991).

Norfolk is a "prevailing party" under Rule 54(d) because Misener voluntarily dismissed with prejudice its claims against Norfolk pursuant to F.R.Civ.P. 41(a)(2). Doc. # 119. That is sufficient to "render[] the opposing party a 'prevailing party' within the meaning of Rule 54." *Mother and Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003); *see also Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985) ("Because a dismissal with prejudice is tantamount to a judgment on the merits, the defendant in this case ... is clearly the prevailing party and should ordinarily be entitled to costs").

Rule 54 provides that a district court's discretion to award costs is subject to limitation by federal statute. *See* F.R.Civ.P. 54(d)(1). Absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in 28 U.S.C. § 1920 and may not tax costs that are not listed in that section. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42, 445 (1987); *see also Arcadian Fertilizer*, 249 F.3d at 1295. That statute provides:

> A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in this case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of

---

[5] Under both federal common law and Georgia law, payments on judgments are applied to interest first, then to principal. *See Aviation Credit Corp. v. Conner Air Lines, Inc.*, 307 F.2d 685, 688 (5th Cir. 1962); O.C.G.A. § 7-4-17.

[6] Obviously, this amount will vary depending on when payment is made. December 1st has been used as a matter of convenience.

8

interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

### 1. *Recoverable Costs*

Accordingly, pursuant to Rule 54(d) and 28 U.S.C. § 1920, the Court grants Norfolk's request for taxation of the following costs against Misner: $200 in Clerk's fees,[7] *see* doc. # 157 sch. A; 28 U.S.C. § 1920(1)); and $115.00 for service of summons and subpoena. *See* doc. # 157 sch. B; 28 U.S.C. § 1920(1); *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000) (private process server fees may be taxed pursuant to 28 U.S.C. § 1920(1)).

Despite Misener's objection, the Court taxes costs associated with serving a subpoena on Metals & Materials Engineers ("Metals & Materials"). Misener objects because it claims that "Norfolk knew that Metals & Materials Engineers was [Misener's expert witness] and knew that if it want[ed] the documents ... Misener's expert possessed[,] it needed to file a Motion to Compel." Doc. # 183 at 7-8.

Misener, however, presents no documentation to support that objection. Norfolk insists, to the contrary, that Misener never identified any employee of Metals & Materials as an expert witness in the case. *Id.;* doc. # 226 at 6. According to Norfolk, the subpoena was part of its repeated efforts to obtain documents relating to testing conducted by Metals & Materials Engineers -- documents that Misener withheld and that Norfolk learned about only after deposing Misener's senior project manager. Doc. # 226 at 6. Because Misener presents no support for its contention that Norfolk improperly issued the subpoena, it has failed to meet its burden, so Norfolk's service costs are recoverable under 28 U.S.C. § 1920(1).

The Court also awards $13,242.10 in transcription expenses for 21 depositions necessarily obtained for use in this case. *See* doc. # 157 sch. C; 28 U.S.C. § 1920 (2); *E.E.O.C.*, 213 F.3d at 620-21 (taxation of deposition costs is authorized by § 1920(2); "a deposition taken within the proper bounds of discovery, even if not used at trial, will normally be deemed 'necessarily obtained for use in the case...'"). According to Norfolk, all 21 of the depositions were either necessary to Norfolk's defense or taken at Misener's request. Norfolk avers that Misener initiated 10 of the depositions, with the remaining 9 spearheaded by Norfolk.[8]

Misener incorrectly argues that Norfolk bears the burden of demonstrating that deposition transcripts were necessarily obtained, *see* doc. # 183 at 8 (*citing Perlman v. Feldman*, 116 F.Supp. 102 (D. Conn. 1953)). To the contrary, it is the opposing party who bears the burden of proving that costs are not taxable. *See E.E.O.C.*, 213 F.3d at 621 (taxing costs where the opposing party

---

[7] As explained below, the costs associated with obtaining certificates of good standing for certain counsel's *pro hac vice* admission to the Southern District of Georgia are not recoverable, despite the fact that such certificates are required pursuant to Local Rule 83.4. *See infra* Section II(D)(2).

[8] Transcripts of two additional depositions, originally initiated by defendants, were misplaced by the Court reporter, requiring the parties to retake them. Doc. # 306.

9

failed to "demonstrate[] that any portion of the deposition was not 'related to an issue which was present in the case at the time the deposition was taken.'" (internal citations omitted)); *see also Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir.1991) (opposing party must overcome presumption of cost award).

Misener claims that the depositions of the following 8 individuals were unnecessary as well as long and duplicative: Robert Musselwhite, Misener's project engineer; Larry Thornton, Misener's construction manager; John Howard Pigott, a Lockwood Green engineer who worked on the project; Ramon Cosme, Misener's surveyor; Scott Moore, Misener's field engineer; George Sigalas, Misener's senior project manager; Guoming Lin, Misener's contract engineer; and Mark LaFon, Misener's vice president who was involved with the project. Doc. # 183 at 8. Norfolk avers that these deponents variously performed surveying and dredging work, designed the mooring dolphins, installed and replaced the mooring dolphins, and testified regarding vessel procedures and the depth of the riverbed. Doc. # 158 4-5. Given the nature of the underlying claims, the Court finds that their testimony would have been necessary to determine liability.

Note, too, that Misener's counsel requested that Norfolk file the original deposition transcripts of Robert Musselwhite, Larry Thornton, Ramon Cosme, and "any other original deposition transcripts in the possession of Norfolk Dredging Company" for use at trial. Doc. # 226 exh. A. The Court concludes that Misener's objections misrepresent the significance of the depositions and the circumstances under which they were obtained. Accordingly, Misener's objections are denied and the Court taxes the full amount of Norfolk's deposition-transcription expenses.

Norfolk's Bill of Costs includes $3,014.88 for copying expenses. *See* doc. # 157 sch. E (documenting fees). Section 1920(4) permits collection of "fees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). "[I]n evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." E.E.O.C., 213 F.3d at 623. Copies attributable to discovery are recoverable under 1920(4). *Id.; see also Cochran v. E.I. DuPont De Nemours*, 933 F.2d 1533, 1540 (11th Cir. 1991) (affirming District Court's award of copying costs).

Misener objects to taxation of copying costs on the basis that Norfolk has not shown these costs to be necessary and reasonable. Doc. #183 at 8-9. Rather, Misener alleges that Norfolk's Bill of Costs "merely lists all of the copies that counsel for Norfolk made or had made during the course of this litigation." *Id.*

Norfolk says the $3,014.88 is for "expenses and courier services related to copying and printing documents necessary for the case, including dozens of oversized copies of construction and survey documents, pleadings, some 211 deposition exhibits, and thousands of documents produced by Misener and other parties in discovery." Doc. # 158 at 5. Most of the costs resulted from Misener's "production of scanned

documents via email" with "no organization and no document numbering." *Id.* at 5-6. Thus, "[t]he only feasible way for Norfolk to use and organize the documents was to send them to a copy service for printing." *Id.* at 6. As support, Norfolk has submitted receipts that generally include the copy quantity, price per copy, and a brief description of what was copied. Doc. # 157. Although Norfolk has not provided a narrative describing the necessity of each page copied, it is "not required to provide an excessively detailed description of the requested copying costs; otherwise a request for copying costs would be economically unfeasible in most cases." *Navarro v. Broney Automotive Repairs, Inc.*, 2008 WL 2901440 at * 1 (S.D.Fla. 7/22/08) (unpublished). The Court finds that Norfolk has sufficiently documented its copying expenses to overcome Misener's objections.

### 2. *Unrecoverable Costs*

The $36,331.80 worth of items contained in Norfolk's Bill of Costs "Schedule F," includes costs associated with expert witnesses, travel, long distance telephone calls, postage, FedEx shipping, and other expenses. They do not fall under any of the categories listed in § 1920 and are therefore unrecoverable. *See Crawford*, 482 U.S. at 441-42 (expenses that can be taxed as costs are limited to those enumerated in § 1920).[9]

In addition, the costs associated with obtaining certificates of good standing for certain counsel's *pro hac vice* admission to the Southern District of Georgia also are not recoverable. *See* doc. # 157 sch. A (documenting costs); *Cathey v. Sweeney*, 2007 WL 1385657 at * 1 (S.D.Ga. 5/8/07) (unpublished) (*pro hac vice* fees are not taxable as costs). Thus, this cost is unrecoverable, too.

Meanwhile, Misener and defendant General Gas have settled their dispute regarding General Gas's Bill of Costs. *See* doc. # 313. Thus, the Clerk shall take no action on General Gas's Bill of Costs. Doc. # 135.

### IV. <u>CONCLUSION</u>

Misener Marine Construction, Inc. is **ORDERED** to pay Norfolk Dredging Company $32,385.19 for principal and

---

[9] In support of their claim for travel expenses and long distance telephone calls, Norfolk cites to an Eleventh Circuit case holding that "travel expenses are appropriate expenses under § 1920 to the extent they are reasonable." Doc. # 158 at 6 (*citing Cullens v. Georgia Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). However, as noted in *Lovett v. Kim*, 2007 WL 983192 (N.D. Ga. 2007), that case is limited to the civil rights context. In *Cullens*, the Eleventh Circuit stated,

> '[t]ravel expenses are appropriate expenses under § 1920 to the extent they are reasonable.' 29 F.3d at 1494. However, in so doing the court cited to its holding in *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir.1983), "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under *section 1988*" (emphasis added). Notably, 42 U.S.C. § 1988 provides for the awarding of attorney's fees in civil rights cases. Thus, the standard promulgated by the Eleventh Circuit in *Dowdell* with respect to including travel expenses as part of taxing costs to the non-prevailing party is for assessing attorney's fees in civil rights cases.... Consequently, the rule proffered by defendants, while applicable in a civil rights context, is inapposite here.

*Lovett*, 2007 WL 983192 at * 5.

interest that remains outstanding on the Court's 1/6/06 judgment. Doc. # 237.

The Court *SUSTAINS* in part Misener's Objections to Norfolk's Bill of Costs. Doc. # 183. It thus *GRANTS* to Norfolk only $16,571.98 of its requested costs against Misener. Doc. # 157. The Court *DENIES* Norfolk's motion for attorneys' fees. Doc. ## 197, 245.

Finally, pursuant to the settlement between Misener and General Gas Carrier Corp./The Steven N, doc. #313, the Clerk's Office shall take no action on General Gas's Bill of Costs. Doc. # 135.

This __24__ day of November, 2008.

*B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA